Hubert D. BYRD, Administrator of John Franklin Sutton, Deceased, Appellant,

v.

William John PAWLICK, Appellee.

No. 10146.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 6, 1966.

Decided June 6, 1966.

Robert B. Morgan, Lillington, N. C. (Morgan & Williams, Lillington, N. C., on brief), for appellant.

Franklin T. Dupree, Jr., Raleigh, N. C. (Dupree, Weaver, Horton, Cockman & Alvis, Raleigh, N. C., on brief), for appellee.

Before SOBELOFF, BOREMAN and BRYAN, Circuit Judges.

BOREMAN, Circuit Judge:

On this appeal questions are presented as to the validity of service of process under the North Carolina nonresident motorist statute, N.C.Gen.Stat. § 1–105 (Supp.1965), and as to the refusal of the District Court to order amendment of process.

On February 5, 1963, and barely within the period fixed by the controlling statute of limitations, the administrator of John Franklin Sutton's estate brought suit against William John Pawlick in the Superior Court of Harnett County, North Carolina, for the wrongful death of Sutton resulting from an automobile collision which had occurred two years earlier. At the time of the accident, Pawlick, a member of the armed forces, had been stationed at Fort Bragg in Cumberland County, North Carolina.

The plaintiff believed that Pawlick was still at Fort Bragg and two attempts were made to secure personal service upon him there. In accordance with North Carolina law,[1] the summons issued by the clerk of the state court was directed to the Sheriff of Cumberland County. On both occasions that officer returned the summons with a notation thereon that Pawlick was not to be found in Cumberland County.

Thereafter plaintiff learned that Pawlick was living at a New Jersey address, and undertook to follow the statutory procedure for substituted service on non-resident motorists.[2] It was first necessary that plaintiff obtain an extension of the life of the summons and this was done in conformity with N.C.Gen.Stat. § 1–95 (Supp.1965). A separate page entitled "Endorsement on Summons," containing a new order for service was attached by the clerk to the original summons. Apparently through inadvertence, the order for service was again directed to the Sheriff of Cumberland County. Pawlick's New Jersey address was hand-written on the endorsement.

Attorneys for the plaintiff then forwarded the summons and copies of the complaint to the Sheriff of Wake County with the request that they be served upon the Commissioner of Motor Vehicles, whose office is located in that county, and who, by section 1–105, is made the agent of nonresident motorists for purposes of service of process. The return of the Sheriff of Wake County reveals that service was made upon the Commissioner on April 22, 1963. While not part of the record, included in the appendix to plaintiff's supplemental brief is a return receipt signed by Pawlick which indicates that notice of service of process upon the Commissioner and a copy thereof did reach Pawlick by registered mail as required by section 1–105(2).[3]

On May 23, 1963, the case was removed by the defendant to the United States District Court. On May 27, 1963, the defendant filed a motion to dismiss the action or in lieu thereof to quash the Sheriff's return of service on the Commissioner on the grounds that the Sheriff of Wake County was without authority to serve the summons directed to the Sheriff of Cumberland County and that the pleadings did not show that summons could lawfully be served upon the Commissioner of Motor Vehicles as process agent for Pawlick. After a hearing on March 25, 1965, the District Court took the matters presented under advisement. On April 20, 1965, plaintiff filed a motion to amend the endorsement to the original summons by substituting "Wake County" for "Cumberland County." On April 29, 1965, the District Court entered an order dismissing the action for "insufficiency of process and insufficiency of service of process." We affirm for reasons hereinafter stated.

Section 1–105 provides in pertinent part that service of process in nonresi-

---

1. N.C.Gen.Stat. § 1–89 (Supp.1965).

2. That procedure is available for service upon persons who establish residence outside North Carolina subsequent to an accident as well as persons who are non-residents at the time of the accident. N.C.Gen.Stat. § 1–105.1 (Supp.1965).

3. It is not clear whether the plaintiff has even now filed the return receipt with the other papers in this cause as required by subsection (3) of section 1–105. Plaintiff admits that he has not filed the affidavit of compliance also required by that subsection, which reads in full as follows:

"The defendant's return receipt, or the original envelope bearing a notation by the postal authorities that receipt was refused, and an affidavit by the plaintiff that notice of mailing the registered letter and refusal to accept was forthwith sent to the defendant by ordinary mail, together with the plaintiff's affidavit of compliance with the provisions of this section must be appended to the summons or other process and filed with said summons, complaint and other papers in the cause."

In view of the conclusions which we reach herein, it is not necessary for us to consider the question of whether plaintiff's noncompliance with this portion of the statute constitutes a jurisdictional defect.

dent motorist cases shall be made in the following manner:

"By leaving a copy thereof, * * * in the hands of the Commissioner of Motor Vehicles, or in his office. Such service, upon compliance with the other provisions of this section shall be sufficient service upon the said nonresident."

The plaintiff, emphasizing the initial phrase, "By leaving a copy thereof, * * *" contends that no particular mode of delivering process to the Commissioner is required by the statute. He argues that service under this statute is sufficient so long as the process reaches the Commissioner's hands, whether by mail, messenger or otherwise.

Pawlick, noting that the above-quoted provision and other portions of the statute use the word "service" in referring to the delivery of process to the Commissioner, argues that all of the requirements for obtaining personal service upon a resident individual must be observed with respect to service upon the Commissioner. It is clear that such procedure was not followed in the instant case, for the summons was served on the Commissioner by an officer other than the one to whom it was directed. N.C. Gen.Stat. § 1–89 (Supp.1965) provides that "Summons must be served by the Sheriff to whom it is addressed for service * * *." [4]

We think the decision of the North Carolina Supreme Court in Hodges v. Home Ins. Co. of New York, 232 N.C. 475, 61 S.E.2d 372 (1950), controls the resolution of this issue. That case involved North Carolina's statutory provisions for substituted service of process upon the state commissioner of insurance as agent for foreign insurance companies doing business within the state. The court's quotation of the relevant statutory provisions reveals that the scheme for substituted service upon foreign insurance companies was, at least at the time of the decision, virtually the same as the present statutory scheme for substituted service upon nonresident motorists. The statute there involved provided that service of process upon insurance companies "shall be made *by leaving* the same *in the hands or office* of the commissioner of insurance * *."" (Emphasis added.) The question in the case was whether the insurance commissioner had authority to accept, *i. e.,* waive, service upon him of process against a foreign insurance company. Summons had been issued out of the Superior Court of Beaufort County and directed to the sheriff of that county. However, the process was not served upon the commissioner in the manner prescribed for service upon resident individuals. Instead, the process was mailed by the plaintiff's attorneys to the commissioner who, upon receipt thereof, stamped the following endorsement upon the summons:

"Service accepted. This 6 day of May, 1949. For the Home Insurance Company, William P. Hodges, Insurance Commissioner."

In holding that the commissioner was without authority to accept service, the court said:

"The wording of the statute clearly indicates that the legislature intended that process should be served in the manner other summonses are served. And, in this connection, it is noted that our statute prescribing procedure for the commencement of civil actions requires that 'summons must * * * be directed to the sheriff or other proper officers of the county' in which the defendant resides or may be found, and 'must be served by the sheriff to

---

4. The fact that the summons was not addressed to the Sheriff of Wake County may also make it defective. N.C.Gen. Stat. § 1–89 (Supp.1965) provides that the summons should "be directed to the sheriff or other proper officers of the county or counties in which the defend-ants or any of them reside or may be found." The statute may be construed to require that the summons be directed to the sheriff of the county in which the statutory agent resides since, if the defendant is to be "found" in the state, it is at that place.

whom it is addressed'. G.S. § 1–89." 232 N.C. at 478, 61 S.E.2d at 374.

■ The plaintiff cites numerous cases to support his contention that mere technical irregularities in summonses should not deprive the court of jurisdiction over the person but we do not think that the cases cited can overcome the compelling force of Hodges v. Home Ins. Co. of New York, supra.

Furthermore, we are not persuaded by plaintiff's argument that the instant case is distinguishable from *Hodges* by reason of the 1951 amendment to the nonresident motorist statute which added the following provision, since amended in immaterial respects:

" * * * and provided that entries on the defendant's return receipt shall be sufficient evidence of the date on which notice of service upon the Commissioner of Motor Vehicles and copy of process were delivered to the defendant, on which date service on said nonresident shall be deemed completed."

■ Plaintiff urges upon us the view that, under the above amendment, all that is required to effect service upon a nonresident motorist is the return of a receipt for registered mail signed by the defendant. Clearly such is not the effect of the amendment. It did not *replace* the statutory scheme for substituted service; rather, it merely provided a conclusive means of determining when that service had been accomplished. Service is still to be made "by leaving" the process with the Commissioner of Motor Vehicles, and the authority of *Hodges* in ascribing meaning to the quoted phrase is not destroyed or diminished by the amendment.

The plaintiff next contends that the District Court should not have dismissed the case but should have permitted the "Endorsement on Summons" to be amended by changing "Cumberland County" to "Wake County." The plaintiff relies on Rule 4(h) of the Federal Rules of Civil Procedure, which provides:

"At any time in its discretion and upon such terms as it deems just, the court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued."

■ We have found no case applying Rule 4(h) in a removal context even though the rule would appear, by its literal terms, broad enough to be applicable to removed cases. Assuming, without deciding, that Rule 4(h) has relevance in the instant situation, we find no error in the District Court's refusal to allow the requested amendment. Clearly, Rule 4(h) is addressed to the sound discretion of the court, and, while we are disadvantaged by the absence of an opinion setting forth the lower court's reasoning in refusing amendment, we think the record provides abundant justification for the District Court's exercise of its discretion. This action was not instituted until the very last day before the end of the statutory period of limitation pertinent to wrongful death actions.[5] On May 27, 1963, four days after the case had been removed, the defendant filed his motion to dismiss which clearly apprised the plaintiff of the claimed invalidity of the summons. Nonetheless, the plaintiff did not move to amend the summons until April 20, 1965, nearly two years later and after a hearing was had in the case. Pawlick argues that, if now put to a trial on the merits, defending would be much more difficult than at an earlier trial. He points out that his witnesses were all servicemen stationed at Fort Bragg who, since the accident, have been discharged and scattered about the country. Moreover, the passage of time may very well have had a dimming effect upon memories. It is against such difficulties as these that statutes of limitations are designed to guard. In view of the plaintiff's unrea-

---

5. N.C.Gen.Stat. § 1–53 (1953).

sonable delay in seeking amendment of a summons which, in our opinion, was clearly invalid under North Carolina law, we find no abuse of the District Court's discretion in refusing amendment.

Moreover, under North Carolina law such an amendment would have worked a discontinuance of the suit and would have commenced a new action on the same cause as of the date of the amendment. This is the clear holding of Morton v. Blue Ridge Insurance Company, 250 N.C. 722, 110 S.E.2d 330 (1959), wherein a summons which had been directed to the Sheriff of Cleveland County was amended by the substitution of "Mecklenburg County" for "Cleveland County." In the instant case, any action for the wrongful death of Sutton was barred by the statute of limitations at the time the amendment was sought.

Affirmed.